## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between EVENGELINE PATTERSON, individually and on behalf of all similarly situated persons, together with his/her heirs, agents, estate, personal representatives, legal representatives, successors, and assigns (hereinafter collectively referred to as "EMPLOYEE") and the PALM BEACH COUNTY SCHOOL BOARD, together with its predecessors, successors, officers, board members, insurers, agents (as of the date hereof), and attorneys (hereinafter collectively referred to as "EMPLOYER"). (EMPLOYEE and EMPLOYER are referred to collectively as the "Parties").

In consideration of the respective obligations and rights set out herein between the Parties and other adequate consideration, the receipt of which is acknowledged, the Parties covenant and agree as follows:

1. **Purpose:**

1.1. The purpose of this Agreement is to conclusively and finally resolve and settle all matters and things in controversy among EMPLOYER, EMPLOYEE and members of the Settlement Class (as further defined herein) related to allegedly unpaid overtime in the matter of *Patterson v. Palm Beach County School Board*, in the United States District Court for the Southern District of Florida, Case No. 07-80240-CIV-HURLEY (hereinafter referred to as the "Lawsuit").

1.2 The members of the settlement class are those persons holding the job of Driver 1, Driver 2 or Bus Attendant during the 2005-2006 or 2006-2007 school years (the "Material Time") who had completed the 90-day probationary period and worked additional days during such school years (collectively, the "Settlement Class," and each a "Class Member"). If a Class Member of the Settlement Class held more than one of these three, eligible job titles during the Material Time, the last job title held during the Material Time shall be the applicable title for purposes of eligibility for payment under this Agreement. Each Class Member who submits a timely claim pursuant to the terms of this Agreement shall also be referred to herein as a "Claimant."

1.3 The Parties expressly agree and acknowledge that this Agreement is part of a global settlement, and that this Agreement is neither valid nor enforceable unless and until the Court enters a written order approving this Agreement.

2. **Opportunity to Negotiate, Consider and Consult with Counsel:**

2.1 The terms of this Agreement are the product of negotiations between the Parties, and the Parties stipulate that the consideration given to support the obligations of this Agreement as stated above is (a) the full consideration agreed to, (b) sufficient in all aspects, and (c) and that neither has received or has been made any promise, inducement, or concession not set out in this Agreement in support of the obligations imposed.

2.2   In executing this Agreement, EMPLOYEE has not relied on any representation, compromise, conduct, or action made or taken by or on behalf of EMPLOYER or EMPLOYER'S attorneys.

2.3   EMPLOYEE acknowledges that EMPLOYEE has obtained the advice of competent counsel and agrees that EMPLOYEE has been given a reasonable period of time within which to consider this Agreement.

2.4   EMPLOYEE and EMPLOYER confirm that they (a) have read this Agreement, (b) had this Agreement explained to them by their attorneys, (c) are relying on their own judgment (d) are relying on the advice of their respective attorneys, (e) confirm their competence to understand and do hereby accept the terms and conditions of the Agreement; and (f) that the School Board has duly authorized execution of this Agreement by the signatory below and intends and agrees to be bound by its terms.

3.   **No Admission of Liability:**   The parties stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any liability whatsoever, and that EMPLOYER expressly denies any such liability. This Agreement represents the compromise of disputed and contingent claims.

4.   **Consideration & Timing:**

4.1   The consideration given by EMPLOYER to EMPLOYEE and all other members of the Settlement Class under this Agreement shall consist of a settlement fund paid by EMPLOYER of a maximum of **$985,600.00** (the "Settlement Fund") to pay claims of all members of the settlement class timely submitted in accordance with this agreement related to overtime wages during the Material Time. Of this fund, payment shall be made as follows:

> (a) A single check payable to each Class Member submitting a timely and valid claim, pro-rated as further described herein, of a gross amount of no more than $650 as back wages for claimants in the Driver 1 group; $750 as back wages for claimants in the Driver 2 group; or $500 as back wages for claimants in the Bus Attendant group, minus all applicable withholdings and separate from taxes or contributions for which the EMPLOYER is additionally responsible to pay as set forth in Paragraph 4.3, all according to the time table set forth in this Agreement.
>
> (b) A second check payable to each Class Member submitting a timely and valid claim, pro-rated as further described herein of no more than $550 as a non-wage award for claimants in the Driver 1 group; $650 as a non-wage award for claimants in the Driver 2 group; or $400 as a non-wage award for claimants in the Bus Attendant group, all according to the time table set forth in this Agreement.
>
> (c) As applicable, a check for a participation fee of $5,000.00 to EMPLOYEE and a check for a participation fee of $500.00 to each other plaintiff who joined the Lawsuit as of mediation on September 24, 2007, who are otherwise eligible to

receive payment under the terms of this Agreement, according to the time table set forth in this Agreement.

4.3   The settlement proceeds are to be paid into a fund from which the District can issue the checks. At its sole expense and according to the terms of this Agreement, the School Board will also administer the fund and cut all checks. Separate from the funds allocated to the Settlement Fund for disbursement pursuant to this Agreement, the School Board shall be additionally responsible for the employer's necessary tax withholdings (FICA, social security, etc), plus any additional percentage for the Florida Retirement System (and/or other required benefits) associated with that portion of the settlement payable in a W-2. The School Board will deduct from each employees' wage award the contribution by such employee to the necessary tax withholdings. The School Board shall issue any necessary W-2, 1099 or other tax forms related to payments made under this Agreement at its sole expense.

4.4   The above back wage and non-wage awards shall be prorated as follows. In order to receive the full award, a Claimant must have worked both school years in the Material Time. Any time worked less than the full two years will result in a prorated award. The eligible time will be calculated on the basis of full quarters of a contract year and not some portion thereof ("Eligible Time"). During the 2005-2006 school year, the 1st quarter ended on October 12, 2005, the 2nd quarter ended on December 22, 2005, the 3rd quarter ended March 17, 2006 and the 4th quarter ended May 31, 2006. During the 2006-2007 school year, the 1st quarter ended on October 19, 2005, the 2nd quarter ended on December 22, 2006, the 3rd quarter ended March 16, 2006 and the 4th quarter ended June 1, 2006. In order to receive any credit for service in any one quarter, the employee must have worked continuously during the full quarter. The calculation of duty days is exclusive of any days attributable to unpaid absences and other unpaid leaves of absence.

By way of further clarification, the pro-ration would be triggered by any unpaid leave in an academic quarter during the Material Time and would result in excluding payment to the Claimant for that quarter; or triggered by any termination in a quarter, which termination would result in excluding payment for that quarter and any subsequent quarter, unless rehired and worked beyond probation during the material time. Any probationer successfully completing probation and working any additional days in an academic quarter would be eligible for compensation for that quarter. Any probationer who had not successfully completed probation in a quarter would not be eligible for compensation for that quarter.

4.5   In addition, EMPLOYER shall pay the Shavitz Law Group, P.A. ("SLG") directly for attorney's fees and costs on behalf of the Settlement Class through a check equal to 17.5% of the Settlement Fund (that is, **$172,480.00**) made payable to SLG, which payment shall cover fees and costs of SLG through conclusion of the settlement, assuming approval by the Court of this Agreement.

4.6   The payments for attorney's fees and costs and the payments for participation fees referenced in Paragraph 4.1(c) above shall be delivered to SLG in accordance with the time table set forth in Paragraph 6 of this Agreement.

---

4.7     The payments of back wage and non-wage awards shall be made in accordance with the time table set forth in Paragraph 6 of this Agreement.

4.8     The consideration given by each the Parties in support of this Agreement consists of full performance of each and every one of the respective obligations described in this document, all of which are expressly made material.

**5.     Release of EMPLOYER:**

5.1     For and in consideration of the required acts and promises set forth in the text of this Agreement, any Claimant, including but not limited to EMPLOYEE, as a condition to payment from the Settlement Fund, agrees to execute a form of release, to be mutually agreed by the parties and which may be in the form of a modified U.S. Department of Labor Form WH-58, stating that all claims for overtime wages during the Material Time are satisfied in full, knowingly and voluntarily releasing and discharging EMPLOYER from any and all claims, demands, causes of action, complaints or charges, known or unknown, of any kind or character, in tort, in contract, or under any other law or statute whatsoever, which Claimant has or might have as a result of, or in any way connected with the such Claimant's claims against EMPLOYER for allegedly unpaid overtime during the Material Time (the "Release"). This Release includes only overtime claims under the Fair Labor Standards Act. This Release does not include claims pursuant to any collective bargaining agreement.

5.2     As part of the Release, each Claimant shall further represent and warrant that the Claimant has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement. As a condition of payment from the Settlement Fund, Claimant shall likewise disclose in the Release any lien or garnishment to which payment under this Agreement may be subject, upon which disclosure the parties may rely without independent investigation or confirmation, except as required by law.

5.3     As a further part of the Release, each Claimant shall acknowledge agreement to terms of settlement, fees, and costs, the tax responsibilities of Claimant for such payments, and that no further representation is being provided by the SLG.

5.4     Failure of a Claimant to timely submit a fully executed Release in accordance of the terms hereof shall be deemed a waiver of the Claimant's right to participate in the Settlement Fund, and such Claimant's individual rights shall not be affected by this Agreement or dismissal of the Lawsuit.

**6.     Administration of Settlement:**

6.1     At its sole expense, the School Board will prepare and mail opt-in letters ("Settlement Notice") and an opt-in claim form ("Claim Form") to the members of the class via first class U.S. Mail, each in a form proposed by SLG and acceptable to the School Board, with return receipt to

SLG. Mailing to include a return envelope to SLG. Before mailing, the School Board will provide SLG with a listing in Excel Spreadsheet format of all employees in 2005-2006 with job titles, all employees in 2006-2007 with job titles, and those employees, with job titles, who worked both years. The list will include last known addresses, last known phone number(s), and the pro-rated wage and non-wage awards as to each, before taxes. Probationers in the class, but excluded from an award, shall be included on the list, with an award of zero.

6.2   The settlement contemplated by this Agreement shall be administered by the School Board according to the following time table, which shall be adjusted on comparable timing in the event it is not approved by the School Board on October 31, 2007 or by order of the court with jurisdiction over the Lawsuit:

a) Oct. 31, 2007 – School Board meeting
b) Nov. 2, 2007 – Submission of settlement paperwork to court (if School Board approves)
c) 10 business days after court approval, School Board delivers checks for attorney's fees and costs and for participation fees to SLG
d) 20 days after court approval, School Board calculates pro-ration for class members
e) 35 days after court approval, School Board sends Settlement Notice, Claim Form and necessary translations with return envelope to SLG
f) 95 days after court approval, Claim Forms to be RECEIVED at SLG
g) 100 days after court approval, SLG to file and serve composite exhibit of Claim Forms received;
h) 120 days after court approval, School Board to send Release with return envelopes to School Board
i) 150 days after court approval, Releases due to be RECEIVED at School Board
j) 165 days after court approval, School Board to provide Excel spreadsheet on award calculations to SLG
k) 170 days after court approval, School Board to issue checks to Claimants submitting a timely Release
l) 180 days after court approval, School Board to file and serve final report on Claimants included, Claimants excluded, individual awards, and reversion to School Board, if any.

6.3   Failure of a Claimant to submit timely a fully executed opt-in form or Release in accordance of the terms hereof shall be deemed a waiver of the Claimant's right to participate in the Settlement Fund, and such Claimant's individual rights shall not be affected by this Agreement or dismissal of the Lawsuit.

7.   **Claims-Made Settlement & Reversion of Un-claimed Funds:**   This is a claims-made settlement for payment of those members of the Settlement Class who submit a timely claim and execute a Release in accordance with the provisions of this Agreement. Those members of the Settlement Class who do not timely claim payment from the Settlement Fund by timely opting in to this Agreement shall not have their individual rights affected, and the funds allocated for said person, in whole or in part, revert to the School Board.

8.      **Dismissal of Lawsuit With Prejudice:** Upon conclusion of the settlement and reversion to the School Board of any un-paid monies from the Settlement Fund, the parties stipulate that the Lawsuit shall be dismissed with prejudice as to the Claimants paid from the Settlement Fund for overtime claims arising during the Material Time.

9.      **Attorneys' Fees:** The prevailing party in any suit or other legal proceeding to enforce this Agreement shall be entitled to recover from the non-prevailing party any reasonable attorneys' fees, expert witness fees, costs of court, or other out-of-pocket expenses reasonably incurred in the course of such suit or other legal proceeding, including through appeal, if any.

10.     **No Changes to Agreement:** No modifications or amendments to any of the terms, conditions, or provisions of this Agreement may be made except by a written agreement executed by all parties hereto, any material changes of which shall be subject to approval by the court presiding over the Lawsuit.

11.     **Severability:** This Agreement is deemed to be written jointly by the parties and may not be construed against any one party as the drafter. If any provision(s) of this Agreement are held to be illegal, invalid or unenforceable under present or future laws, any such provision(s) shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement shall thereafter be construed and enforced as if such illegal, invalid, or unenforceable provision(s) had never comprised a part hereof. In such case, the remaining provision(s) of this Agreement shall continue in full force and effect and shall not be affected by any such illegal, invalid, or unenforceable provision(s) or by severance herefrom.

12.     **Effect of Waiver:** The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement shall permit the non-breaching party to repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

13.     **Governing Law:** The laws of the State of Florida shall govern the validity, construction, and enforcement of this Agreement.

14.     **Ownership of Claims & Disclosure of Liens:** EMPLOYEE represents and warrants that EMPLOYEE has not sold, assigned, transferred, conveyed or otherwise disposed of to any third party, by operation of law or otherwise, any action, cause of action, debt, obligation, contract, agreement, covenant, guarantee, judgment, damage, claim, counterclaim, liability, or demand of any nature whatsoever, relating to any matter covered by this Agreement.

15.     **Multiple Originals:** This Agreement may be executed by facsimile and in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one instrument.

16. **Cooperation:** The parties agree promptly to take all actions reasonably necessary to effectuate this Agreement, including but not limited to such motions to the court with jurisdiction over the Lawsuit for approval of this Agreement and continuance of any intervening deadlines contrary to those contemplated by this Agreement.

17. **Proactive Measures:** The EMPLOYER agrees that as of the start of the 2008-2009 school year, the Settlement Class will be paid a hourly rate pursuant to the hours actually worked during any given pay period and paid an overtime rate for any hours over forty (40) which are worked during any given work week.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

ACKNOWLEDGED and AGREED this 26th day of October, 2007:

By Plaintiffs:

_____
EVANGELINE PATTERSON

ACKNOWLEDGED and AGREED this _31st_ day of October, 2007:

By Defendant, Palm Beach County School Board:

_____
WILLIAM G. GRAHAM
Chairman

_____
ARTHUR C. JOHSON, Ph.D.
Superintendent

_____
GERALD A. WILLIAMS
Chief Counsel